## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>v.<br><br>**BRANDON BEST GORDON,**<br>*aka Brandon Brooks Gordon,*<br><br>**Defendant.** | **CR 19-46-BLG-SWS**<br><br><br>**ORDER DENYING MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)(i)** |

This matter comes before the Court on Defendant Brandon Gordon's pro se motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) ("compassionate release"). (ECF 151.) Court-appointed defense counsel supplemented the motion (ECF 160, 162), the Government submitted an opposition (ECF 164), and defense counsel replied (ECF 168). Having considered the parties' arguments, reviewed the record herein, and being otherwise fully advised, the Court finds and concludes the motion must be denied.

## **BACKGROUND**

In April 2019, Mr. Gordon was indicted on one count of being a felon in possession of a firearm and one count of possessing stolen firearms. (ECF 1.) Following a two-day jury trial in October 2019, the jury acquitted him of possessing stolen firearms but convicted him of possessing firearms as a felon. (ECF 72.) He was sentenced to 87 months of imprisonment to be followed by three years' supervised release. (ECF 97.) He did not obtain any relief in his direct appeal to the Ninth Circuit. *United States v. Gordon*, 851 F. App'x 89 (9th Cir. 2021) (mem.). He also submitted two motions for relief under 28 U.S.C. § 2255 (ECF 126, 142), which were denied and are currently on appeal before the Ninth Circuit.

## DISCUSSION

Before it can consider the merits of Mr. Gordon's current motion for sentence reduction, the Court must determine whether it has jurisdiction over the motion in light of the § 2255 decisions currently on appeal.

### 1.  Jurisdiction over Motion for Sentence Reduction

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam) (citations omitted).  Mr. Gordon filed notices of appeal as to each § 2255 motion that was denied, and the Ninth Circuit has issued certificates of appealability concerning each notice of appeal.  (ECF 158, 170.)  None of the issues raised in Mr. Gordon's § 2255 motions concern the length or appropriateness of his sentence; they instead all attack the validity of his conviction.  (*See* ECF 126, 131, 142.)  Indeed, his claims of ineffective assistance of counsel do not take issue with his attorney's performance at or concerning his sentencing.  Mr. Gordon's current motion for sentence reduction does not concern the same core issues as those on appeal in his § 2255 motions.  "[T]he notion that a pending appeal strips the trial court of jurisdiction is a judicially-crafted rule designed to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *United States v. Hickey*, 580 F.3d 922, 927 (9th Cir. 2009).  The issues before the Ninth Circuit do not touch on the same subject matter as the issues presented in this instant motion.    Consequently, the Court finds it retains jurisdiction to consider Mr. Gordon's current § 3582 motion for sentence reduction. *See United States v. Campbell*, No. CR 09-640 CW, 2016 WL 2654373, at *2 (N.D. Cal. May 10, 2016) (the trial court retained jurisdiction over a § 3582 motion even while a § 2255 motion involving

different issues was pending on appeal before the Ninth Circuit); *United States v. Chambers*, No. 1:18-CR-00076-BLW, 2022 WL 60598, at *1-2 (D. Idaho Jan. 5, 2022) (finding the trial court had jurisdiction to consider the defendant's § 3582 motion even while an appeal from the denial of the defendant's prior § 3582 was pending because the prior § 3582 motion raised different issues).

2.      **§ 3582(c)(1)(A)(i) Motion for Sentence Reduction**

Generally, federal courts "may not modify a term of imprisonment once it has been imposed." *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (quoting 18 U.S.C. § 3582(c)).   One of the limited exceptions to this general rule is found in 18 U.S.C. § 3582(c)(1)(A)(i), which authorizes sentencing courts to reduce a sentence when warranted by "extraordinary and compelling reasons" (and is colloquially known as "compassionate release").

> When, as here, a defendant moves for compassionate release under § 3582(c)(1)(A), district courts may reduce his term of imprisonment if four conditions are met: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" warrant a sentence reduction; (3) a sentence reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission; and (4) the district court considered the factors set forth in 18 U.S.C. § 3553(a).

*United States v. Chen*, 48 F.4th 1092, 1094–95 (9th Cir. 2022).   "As compassionate release derogates from the principle of finality, it is a narrow remedy, and the court's disposition of a compassionate release motion is discretionary, not mandatory."   *United States v. Wright*, 46 F.4th 938, 944-45 (9th Cir. 2022) (cleaned up).

2.1      **Administrative Exhaustion**

The parties and the Court agree Mr. Gordon exhausted his administrative remedies by submitting a request for compassionate release to the warden of his facility on July 22, 2023, which went unanswered and is presumed denied.   (*See* ECF 164 p. 3.)

2.2      **Extraordinary and Compelling Reasons and Consistency with Applicable Policy Statements**

The Court's first concern here is whether there exists a Sentencing Commission policy statement applicable to Mr. Gordon's motion. On November 1, 2023, certain amendments to the U.S. Sentencing Guidelines took effect. Of import here, the U.S. Sentencing Commission amended U.S.S.G. § 1B1.13 (Amendment 814), which is a policy statement specifying the factors that could amount to extraordinary and compelling circumstances justifying a sentence reduction under § 3582(c)(1)(A)(i) sought by a prisoner. Prior to the November 1, 2023 amendment, U.S.S.G. § 1B1.13 applied only to BOP-filed motions. At that time, in the Ninth Circuit, a sentencing court had "discretion to consider a combination of 'any' factors particular to the case at hand" when determining a defendant-filed § 3582(c)(1)(A)(i) motion. *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (quoting *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021)). In this case, Mr. Gordon filed his pro se motion for sentence reduction on October 31, 2023 (ECF 151 p. 1), the day before the current version of U.S.S.G. § 1B1.13 took effect. The Court determines the substantive changes to § 1B1.13 that took effect on November 1, 2023, do not apply retroactively to Mr. Gordon's motion that was already pending at the time. *See United States v. Lazo*, No. 22-13508, 2024 WL 748665, at *2 n.4 (11th Cir. Feb. 23, 2024) (unpublished) ("these substantive changes to § 1B1.13 [enacted on November 1, 2023] do not apply retroactively"); *United States v. Morgan*, 376 F.3d 1002, 1010 (9th Cir. 2004) (a court should consider a later amendment to the sentencing guidelines "only if that amendment is a clarification of existing law rather than a substantive change in the law"); *United States v. Roper*, 72 F.4th 1097, 1101 n.2 (9th Cir. 2023) (noting that the Sentencing Commission had amended § 1B1.13, but not applying it in that case because "it [was] not yet in effect"). Accordingly, the Court applies the law on this subject as it stood on the date of Mr. Gordon's motion filing, which at that time held that "U.S.S.G. § 1B1.13 is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A)

motions filed by a defendant." *Aruda*, 993 F.3d at 802. Instead, the Court may "consider a combination of 'any' factors particular to the case at hand" in deciding Mr. Gordon's motion. *Id.*

Mr. Gordon says the following considerations amount to extraordinary and compelling reasons in support of a sentence reduction: (1) the conditions of his confinement at FCI Sheridan during the COVID-19 pandemic have been overly punitive, (2) his sentence was enhanced because he received 2 criminal offense level points for possessing a stolen firearm as relevant conduct but he was acquitted of possessing a stolen firearm at trial, (3) he has been deemed ineligible to participate in the BOP's Residential Drug and Alcohol Program (RDAP) because he is on parole from the State of Montana despite this Court's RDAP recommendation at sentencing, (4) he spent 10 months in incarceration prior to his sentencing that he never received credit for, (5) he received 2 status points on his criminal history score at sentencing for being subject to a prior criminal justice sentence when committing the offense in this case, but those status points are subject to reduction by Amendment 821, and (6) he has conducted himself well while in prison and has a solid release plan in place. (*See* ECF 151 pp. 1-5.)

### 2.2.1   Conditions of Confinement

The Court does not disagree with Mr. Gordon that incarceration conditions during the COVID-19 pandemic have been more onerous and difficult than times outside of a pandemic. It has been more onerous and difficult for all prisoners, though. And difficult conditions experienced by all prisoners are not "extraordinary." *See United States v. Willis*, No. 3:12-CR-00292-HZ, 2023 WL 2625530, at *5 (D. Or. Mar. 22, 2023) ("General conditions in a prison related to COVID-19, without some circumstance individual to a particular defendant, 'are not sufficient to reduce [the] defendant's sentence.'") (quoting *United States v. Martinez*, No. 15-CR-1299-2-GPC, 2022 WL 126306, at *4 (S.D. Cal. Jan. 13, 2022)). Mr. Gordon offers precious

little concerning how the conditions at FCI Sheridan have been uniquely or particularly difficult for him (*see* ECF 151-1 pp. 2-3), and generalized claims of arduous conditions do little to establish extraordinary and compelling reasons for compassionate release. *See United States v. Rosales-Zuniga*, No. 3:16-CR-00269-AN, 2024 WL 448383, at *4 (D. Or. Feb. 5, 2024) ("Accordingly, defendant's generalized allegations of prison conditions at FCI Sheridan related to COVID-19 are not sufficient to justify compassionate release."). Nonetheless, generally harsher conditions than those contemplated at sentencing can "contribute[] to the analysis of extraordinary and compelling circumstances." *Willis*, 2023 WL 2625530, at *5. "The Court accordingly keeps [Mr. Gordon's] allegations about the conditions at FCI Sheridan in mind while considering other bases for sentence reduction." *Rosales-Zuniga*, 2024 WL 448383, at *5.

### 2.2.2   Use of Acquitted Conduct as Relevant Conduct

Following the jury trial, Mr. Gordon was acquitted of the charge of possessing stolen firearms because the jury did not find the Government proved the charge beyond a reasonable doubt. Nonetheless, a 2-level enhancement was applied to Mr. Gordon's offense level at sentencing based on his possession of stolen firearms by a preponderance of the evidence. Mr. Gordon argues that this is an extraordinary and compelling reason supporting a sentence reduction in light of the anticipated amendment to the U.S. Sentencing Guidelines largely precluding a sentencing court from considering acquitted conduct as relevant conduct.

The U.S. Sentencing Commission has proposed the acquitted-conduct amendment to the sentencing guidelines, which would mostly eliminate the consideration of acquitted conduct as relevant conduct. Absent contrary action by Congress, the proposed acquitted-conduct amendment will become effective November 1, 2024. Further, the U.S. Sentencing Commission is currently accepting public comment concerning whether the acquitted-conduct amendment

should be applied retroactivity to previously sentenced defendants like Mr. Gordon.  *See* Notice of submission to Congress of amendments to the sentencing guidelines effective November 1, 2024, and request for comment, 89 Fed. Reg. 36,853 (May 3, 2024).

Because the Court is considering Mr. Gordon's motion under the law as it stood before U.S.S.G. § 1B1.13 was amended on November 1, 2023, the Court "may consider non-retroactive changes in sentencing law, in combination with other factors particular to the individual defendant, when analyzing extraordinary and compelling reasons for purposes of § 3582(c)(1)(A)." *Chen*, 48 F.4th at 1098.  But the proposed acquitted-conduct guideline amendment is just that—proposed.  It has not yet been effected, and the current proposed version had not even passed a Sentencing Commission vote at the time Mr. Gordon filed his motion.  Accordingly, to stay consistent in its analysis, the Court finds it is not appropriate to consider this proposed substantive change in sentencing law in deciding Mr. Gordon's current motion.  Whether the proposed amendment will become effective in November 2024 and whether it will be retroactive are both speculative at this point.  Mr. Gordon's reliance on the potential acquitted-conduct amendment is therefore premature.  More significantly, though, if this amendment is enacted and applies retroactively, the appropriate avenue to raise that issue is through a motion under 18 U.S.C. § 3582(c), which authorizes a sentence reduction based on a retroactive lowered sentencing range. *See United States v. Moreno*, No. 316CR00032SLGKFR, 2024 WL 892643, at *1 (D. Alaska Mar. 1, 2024) ("[T]he Court does not find that a retroactive amendment is an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1); rather, the fact that Congress provided by a separate section for relief in those circumstances militates against finding that action to be extraordinary and compelling.  Relief for such a change in the guidelines must be sought under subsection (c)(2).").

In this case, the Court does not find the proposed acquitted-conduct amendment is properly considered in the extraordinary-and-compelling analysis. This argument does not support Mr. Gordon's current motion for a sentence reduction under § 3582(c)(1)(A)(i).

### 2.2.3   RDAP Eligibility

Mr. Gordon also asserts his case is extraordinary and compelling because it appears he is not eligible to participate in the BOP's Residential Drug and Alcohol Program (RDAP) since he was paroled from a Montana state sentence to his federal sentence, despite the Court's strong recommendation at sentencing that he participate in RDAP. (ECF 151 pp. 3-4; ECF 168 pp. 2-4.)

Mr. Gordon's eligibility for RDAP is frankly unclear to the Court. His BOP progress report from August 2023 says he is both "unqualified" for RDAP and on the waiting list for RDAP. (ECF 165-4 p. 2.) It also says he is on the waiting list for non-residential drug treatment, and it appears he may participate in one or the other. (*Id.*) Due to this confusion, and because the burden rests with the petitioner, the Court does not find Mr. Gordon's RDAP eligibility/ineligibility to weigh in favor of his claim of extraordinary and compelling circumstances. The Court, though, continues its recommendation that Mr. Gordon participate in RDAP if possible; his drug addiction rests at the center of most of his prior criminal conduct, and his need for treatment (and his need to commit himself to treatment) is manifest.

### 2.2.4   Status Points Guideline Amendment

Mr. Gordon additionally says his sentence was enhanced by his receipt of "status points" added to his criminal history for being under a prior criminal justice sentence while committing the crime in this case, but U.S. Sentencing Guideline Amendment 821 (which has been fully enacted and is retroactive) reduces those status points. (ECF 151 p. 5.) Mr. Gordon indeed

received two status points added to his raw criminal history score for being under a state criminal justice sentence at the time he committed the offense in this case, but Amendment 821 still makes no difference to this case.

Part A of Amendment 821 limits the total number of status points that should be added to a defendant's criminal history score. Prior to Amendment 821, a defendant would automatically receive two status points for committing the instant offense while still subject to a prior sentence. Amendment 821 limits status points to one point, and even then it only adds that one point if the defendant's raw criminal history score is seven points or more. U.S.S.G. § 4A1.1(e)(2023).

Here, Mr. Gordon had a raw criminal history score of 12 based on his multiple prior criminal convictions. (PSR pp. 7-13.) Under Amendment 821 Part A, if Mr. Gordon were sentenced today, he would only receive one status point instead of the two he received at sentencing; thus, his total criminal history score would be 13 today instead of the 14 it was at sentencing. But even if his total criminal history score is 13 instead of 14, he's still in Criminal History Category VI and still subject to the same sentencing guideline range. Consequently, because the Court finds Amendment 821 makes no difference to Mr. Gordon's sentence, it cannot support his claim of extraordinary and compelling circumstances.

### 2.2.5   Credit for Time Served

Mr. Gordon also suggests it is extraordinary and compelling that he spent 10 months in federal custody prior to his sentencing and was not given credit for this time by the BOP. (ECF 151 p. 5.) Mr. Gordon is mistaken about how credit for time served operates in his case.

In July 2019, Mr. Gordon was incarcerated in a state jail on state charges. (ECF 10 p. 2.) On July 8, 2019, he was arrested at the jail in connection with this case by U.S. Marshals on a federal writ of habeas corpus ad prosequendum. (ECF 11, 12, 23.) He was then prosecuted in

this federal matter over the next eight months, with sentencing occurring on March 6, 2020.  (ECF 96, 97.)   And this federal sentence was ordered to run consecutive to any state sentences.  (ECF 96.)   He was later paroled from his state sentence to begin this federal sentence on November 13, 2020.  (ECF 165-5 p. 2.)   The BOP has calculated his time in federal custody as commencing on November 13, 2020 (*id.*), and the BOP is correct.

In short, during the time Mr. Gordon was answering the charges in this case based on the federal writ of habeas corpus ad prosequendum, he remained under the state's jurisdiction, and that time in custody counted toward his state sentence, not this federal sentence.   United States Magistrate Judge Steven Yarbrough from the District of New Mexico explained it well:

> A writ of habeas corpus *ad prosequendum* "permits one sovereign—called the 'receiving sovereign'—to 'borrow' temporarily a person in the custody of another sovereign—called the 'sending sovereign'—for the purpose of prosecuting him." *Jake v. Herschberger*, 173 F.3d 1059, 1061 n.1 (7th Cir. 1999).   The "sending sovereign" is the sovereign who obtained primary jurisdiction over the prisoner by being the first sovereign to take the prisoner into custody.   *Newman v. Cozza-Rhodes*, 526 Fed.Appx. 818, 821 (10th Cir. 2013) (unpublished).   "Because the receiving sovereign merely obtains limited jurisdiction over the 'borrowed' prisoner, the prisoner is still under the jurisdiction of the sending sovereign, and is considered to be in the custody of the sending sovereign not the receiving sovereign."   *Jake*, 173 F.3d at 1061 n.1; *see also United States v. Welch*, 928 F.2d 915, 916 n.2 (10th Cir. 1991) (noting that a "state does not relinquish jurisdiction when it delivers a prisoner for federal prosecution pursuant to a federal writ of habeas corpus ad prosequendum....   The state merely 'lends' the prisoner....").   Thus, although a prisoner might be in the *physical custody* of the receiving sovereign, the prisoner remains a prisoner of the sending sovereign for the duration of the receiving sovereign's proceedings against him.   *Id.*; *see also Hernandez v. U.S. Attorney General*, 689 F.2d 915, 918 (10th Cir. 1982) (concluding that a Colorado prisoner transferred to federal custody pursuant to a writ of habeas corpus *ad prosequendum* remained a "state prisoner").

*Garcia v. Rivas*, No. 15-CV-377 MCA/SCY, 2016 WL 10538197, at *3 (D.N.M. Mar. 11, 2016) (footnotes omitted), *report and recommendation adopted*, No. CV 15-377 MCA/SCY, 2016 WL 10538196 (D.N.M. Apr. 12, 2016); *see Johnson v. Gill*, 883 F.3d 756, 764 (9th Cir. 2018) ("a federal sentence does not commence merely because a prisoner is in the federal government's

physical custody").

Magistrate Judge Yarbrough went on to explain why a writ of habeas corpus ad prosequendum does not interrupt the state incarceration and sentence:

> This rule makes sense.   Unfair results would ensue from a rule that the physical transfer of a person pursuant to a writ of habeas corpus *ad prosequendum* automatically interrupted a prisoner's sentence and prevented that prisoner from continuing to obtain credit for a sentence that prisoner had already started serving. For instance, if a prisoner transferred to the physical custody of the United States Marshal to face federal charges was then acquitted of those federal charges, it would be unfair for that prisoner to then return to the sending sovereign to complete that sentence with no credit for the time spent in physical United States Marshal's custody.   Similarly, if the prisoner was convicted on federal charges and the federal sentence received was less than the time in physical custody of the United States Marshal, the prisoner would receive neither federal nor non-federal credit for at least part of the time he was in continual custody since beginning to serve his non-federal sentence.   Such a result is contrary to one of the purposes of 18 U.S.C. § 3585—ensuring that a prisoner is given credit for time spent in official detention.

*Garcia*, 2016 WL 10538197, at *4 (footnote omitted); *see Johnson*, 883 F.3d at 765-66 (9th Cir. 2018) (noting a writ of habeas corpus ad prosequendum authorizes "a formal temporary transfer of physical control" but not primary jurisdiction over the defendant, and determining "that a federal sentence commences only when the federal government has physical possession of **and** primary jurisdiction over the defendant") (emphasis added); *see also Binford v. United States*, 436 F.3d 1252, 1254-56 (10th Cir. 2006) (holding the defendant was not entitled to federal credit for time served while in physical federal custody on a writ of habeas corpus ad prosequendum because he was still serving his state sentence during that time, and his "federal sentence never began until he was finally received into federal custody for the purpose of serving his federal sentence, after completing his state sentence").

Consequently, the BOP is correct that Mr. Gordon's federal sentence, which was ordered to run consecutive to any state sentences, did not commence until the state released him on parole on November 13, 2020.   His time spent in physical federal custody on the ad prosequendum writ

counted toward his state sentence because the state retained primary jurisdiction over him throughout that time.   *See* 18 U.S.C. § 3585(b) ("defendant shall be given credit toward the service of a term of imprisonment for any time he spent in official detention prior to the date the sentence commences … **that has not been credited toward another sentence**") (emphasis added).   Mr. Gordon was only in temporary physical federal custody pending the prosecution of the federal charges while remaining under the primary jurisdiction of Montana.[1]   Mr. Gordon did not serve his state sentence in two installments, interrupted by his federal prosecution in this case, nor is he serving his federal sentence in two installments, interrupted by his return to state custody after his federal prosecution.   Instead, he served his state sentence continuously and then began his federal sentence once released on parole from his state sentence.   *See Green v. Christiansen*, 732 F.2d 1397, 1400 (9th Cir. 1984) (noting the general rule is that "[a] sentence … means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments") (quoting *White v. Pearlman*, 42 F.2d 788, 789 (10th Cir. 1930)).   Because Mr. Gordon's argument about missing credit for time served is erroneous, it cannot support his claim of extraordinary and compelling circumstances.

### 2.2.6   Prison Conduct and Release Plan

Mr. Gordon lastly points to his good behavior in prison and his solid release plan to support his claim of extraordinary and compelling circumstances.   Mr. Gordon is commended for having no disciplinary conduct while in BOP custody.   (*See* ECF 151 p.5; ECF 164 p. 12; ECF 165-4 p. 1.)   His "numerous violations" during his incarceration at the Lewis and Clark County Detention Center in early 2019, including for verbally abusing officers, refusing orders, lying, and conspiring with another inmate to smuggle drugs into the detention center (PSR p. 17) limit the strength of

---

[1] Indeed, while in state jail, Mr. Gordon himself advocated to be brought into federal court in an expeditious manner to answer the federal indictment.   (ECF 6, 7, 9.)

this point, though.

Mr. Gordon has participated in only a few education classes during his time at FCI Sheridan. (ECF 151-1 p. 11 (showing Mr. Gordon to be participating in a walking class and having completed a nutrition class, a softball clinic, and a fitness conditioning class as of October 18, 2023).)   The Court blames most of that on the limited class offerings caused by the COVID-19 pandemic, though.   (*See* ECF 165-4 p. 2 (noting his thwarted attempts to enroll in other classes due to staffing shortages and his waitlisted status for drug treatment); ECF 151-1 pp. 9-10 (showing several education classes he has been waitlisted for).)   He also asserts he "has remained sober and changed his attitude toward life since his incarceration" and "he takes his recovery seriously." (ECF 151 p. 5.)   The Court hopes so.

Additionally, Mr. Gordon included his anticipated release plan, stating he would reside with his sister in Billings, Montana; his sister is a clean and sober productive member of society with no criminal history; he can attend drug treatment aftercare at a local facility; and he has probable employment at the Big Sky Resort.[2]   (ECF 151-1 p. 13.)   He further stated, "I have used the past five years to better myself in every aspect of my life, physically, emotionally, and spiritually," and he looks forward to performing volunteer service.   (*Id.*)   The Court commends Mr. Gordon for working to arrange for a healthy and sober living environment upon his release from incarceration.

Mr. Gordon's good behavior in BOP custody and his release plan weigh in support of Mr. Gordon's claim of extraordinary and compelling circumstances, though not heavily.   Following BOP rules and creating a release plan are largely expected from an incarcerated individual.   *See United States v. Hill*, No. 2:16-CR-00019-BLW-7, 2021 WL 4443316, at *4 (D. Idaho Sept. 28,

---

[2] He did not elaborate on navigating the fact that Big Sky Resort is a three-hour drive from Billings.

2021) (The defendant's good conduct during incarceration, educational advancement, and drug treatment were to be commended, but did not amount to extraordinary and compelling circumstances; "[e]ven though an accomplishment may be considered extraordinary when compared to an inmate's previous life path, such behavior does not mean it is an extraordinary and compelling reason that warrants release."). His recent good behavior while incarcerated and his healthy release plan are to his benefit but do not weigh heavily in support of his motion.

### 2.2.7   Insufficient Showing of Extraordinary and Compelling Reasons

Of the points presented by Mr. Gordon, only his conditions of confinement and his good conduct under BOP incarceration over the last three-plus years support his claim of extraordinary and compelling circumstances, but they do not carry the heavy burden of proving extraordinary and compelling reasons in support of a sentence reduction under § 3582(c)(1)(A)(i). His incarceration during the height of the COVID-19 pandemic is unfortunate, but certainly not extraordinary as all other prisoners had to endure similar hardships. The Court is optimistic that his good behavior over the last few years is a sign that Mr. Gordon has matured a bit and is finally taking his conduct and wellbeing seriously, but these considerations are insufficient to satisfy the "narrow remedy" available under § 3582(c)(1)(A)(i), *Wright*, 46 F.4th at 944.

### 2.3   § 3553(a) Factors

Even if Mr. Gordon established that extraordinary and compelling circumstances existed in his case, the Court would still deny his current motion in light of the § 3553(a) considerations.

Section 3553(a) provides that a sentencing court "shall impose a sentence sufficient, but not greater than necessary" to meet the several purposes of sentencing, and it sets forth the following factors for a court to consider when imposing a sentence.

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed—

    (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)   to afford adequate deterrence to criminal conduct;

    (C)   to protect the public from further crimes of the defendant; and

    (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for—

    (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

        (i)   issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii)   that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(5)   any pertinent policy statement—

    (A)   issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (B)   that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).   In considering a motion for sentence reduction under § 3582(c)(1)(A), the Court is required by the statute to consider the § 3553(a) factors applicable to the motion.

The nature and circumstances of the offense in this case remain serious.   Mr. Gordon was observed leaving a known drug house with a black bag, and two stolen firearms (along with a ballistic plate vest, some drugs, and some cash) were seized from the black bag during execution of a search warrant.   During a later police interview, Mr. Gordon admitted he was traveling to Billings to pay an outstanding drug debt with the currency from the black bag and stated his drug

source also liked to trade stolen items for drugs. The jury found him guilty of knowingly possessing firearms while knowing he was barred from possessing firearms by his prior felony convictions.

Mr. Gordon's history is shrouded in criminal conduct. He committed his first felony at age 17 by aiding and abetting a failed robbery where the victim was shot. (PSR pp. 9-10.) Additional felony convictions followed for drugs, failing to register as a violent offender, motor vehicle theft, and eluding. (*Id.* pp. 11-13.) With many of these convictions (and some misdemeanor convictions) came a steady diet of probation violations and drug relapses. (*Id.* pp. 10-13.) At the time of his sentencing in this case, Mr. Gordon had four other criminal cases pending in Montana state court, mostly involving drugs and theft. (*Id.* pp. 18-21.) The Government is accurate when it says: "It is clear from his continued and escalating criminal conduct that those [prior] sentences were insufficient to impress upon him the need to follow the law and deter him from committing further crimes." (ECF 164 p. 12.)

Even more significant, Mr. Gordon has yet to complete any significant drug treatment while in BOP custody. As already noted, Mr. Gordon's extensive history of criminal conduct is largely tied to his drug addiction and efforts to obtain or pay for drugs. The Government is again correct in saying Mr. Gordon "has no history of being a productive member of society" (*id.*), and that fact is primarily driven by his drug problems. Consequently, until Mr. Gordon completes significant drug treatment, the Court finds that compassionate release or a sentence reduction would fail to afford adequate deterrence to future criminal conduct, fail to protect the public from further crimes, and fail to provide Mr. Gordon with needed correctional treatment in the most effective manner.

The § 3553(a) factors weigh against any sentence reduction at this time, but the Court hopes

to see more clean conduct and positive progress from Mr. Gordon.

## CONCLUSION AND ORDER

Mr. Gordon has not sufficiently established extraordinary and compelling circumstances warranting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), nor has he shown the § 3553(a) sentencing considerations weigh in favor of a sentence reduction at this time.

**IT IS THEREFORE ORDERED** that Defendant Brandon Gordon's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) (ECF 151) is **DENIED**.

**ORDERED:** May _29 ᵗʰ_, 2024.

Scott W. Skavdahl
United States District Court Judge